IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Maurice Antoine Agumagu, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Simon Major; Darrell McGhaney; ) <br> John Adams; Jay Shire, ) <br> ) <br> Defendants. ) <br> _____) | Civil Action No. 6:09-2677-JFA-KFM <br><br> **REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 33). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

In his complaint, the plaintiff alleges negligence and deliberate indifference to his health and safety against four employees of the Sumter-Lee Regional Detention Center ("SLRDC").

On March 8, 2010, the defendants filed a motion for summary judgment. By order filed March 9, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on May 12, 2010. The defendants filed a reply on May 24, 2010.

**FACTS PRESENTED**

The plaintiff is currently incarcerated in the Manning Correctional Institution. At the time of the events alleged in his complaint, the plaintiff was a pretrial detainee at the SLRDC. The plaintiff alleges the defendants violated his constitutional rights when an inmate, Jermaine Thomas, was placed in his cell on September 5, 2009. The plaintiff alleges he was on protective custody and was not supposed to have a roommate. He claims Inmate Thomas assaulted him after telling the defendants the plaintiff wanted to kill him. Finally, the plaintiff alleges his life was placed in danger on September 17, 2009. In his response in opposition to the motion for summary judgment, the plaintiff states that on that date he was given a cellmate who was a gang member. According to the plaintiff, "nothing happened between us, and he was moved shortly after" (pl. resp. m.s.j. 1).

**APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining

2

whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff alleges that the defendants failed to provide for his reasonable safety. The plaintiff's claims fail on the merits.[1] Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 (1979). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions

---

[1]The defendants also argue that the plaintiff failed to exhaust his administrative remedies. Since this court finds the claims fail on the merits, this argument will not be addressed.

3

of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (citing *Bell,* 441 U.S. at 53).

To state a claim that conditions of confinement violate constitutional requirements, "a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993) (quoting *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir.1991)). The United States Supreme Court has noted:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk of inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See* Prosser and Keeton §§ 2, 34, pp. 6, 213-214; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680; *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Farmer v. Brennan*,[2] 511 U.S. 825, 837-38 (1994) (brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)). The Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir.1995).

The District Court of South Carolina has expounded on *Farmer* and its progeny holding it is "clear that general knowledge of facts creating a substantial risk of harm is not enough." *Hitter v. Ozmint*, C.A. No. 2:06-1502-TLW-RSC, 2007 WL 680733, *4 (D.S.C. March 1, 2007). Going further, to state a claim, the plaintiff must show the official actually drew the inference between those general facts and the "specific serious risk of harm confronting the [plaintiff]." *Id.* Deliberate indifference requires a showing that a prison official actually knew of and disregarded "an objectively serious condition, medical need, or risk of harm." *De'Lonta v. Angelone*, 330 F.3d 630, 634 (4th Cir. 2003). To be sufficiently serious, the alleged "unconstitutional condition of confinement…must fail to meet the minimal civilized measure of life's necessities." *Majors v. Thompson*, C.A. No. 8:04-22432-HFF-BHH, 2006 WL 91569, *4 (D.S.C. January 13, 2006) (citing *Rhodes v. Chapman*, 452 U.S. 337, 341 (1981)). Importantly, "[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977).

The defendants first argue that the plaintiff's claim that he was on protective custody is inaccurate. According to the affidavit of Staff Sergeant James P. Adams, an officer at the SLRDC, the plaintiff was housed in Cell B-117 in Bravo Pod on September 5,

---

[2]The seminal case, *Farmer v. Brennan*, set forth the guidelines to evaluate a conditions of confinement claim pursuant to the Eighth Amendment. However, it is widely settled that the Due Process Clause of the Fourteenth Amendment guarantees pretrial detainees such "humane conditions of confinement," but the Eighth Amendment provides the benchmark for such claims. Thus, the standards set forth in *Farmer* are applicable even though the plaintiff is a detainee. *See Blaine v. Fox*, C.A. No. 8:07-807-RBH, 2007 WL 1423750, *3 n.2 (D.S.C. May 10, 2007) (citing *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)).

5

2009, for disciplinary reasons[3] (Adams aff. ¶ 4; *see also* McGhaney aff. ¶ 5; John C. Shirah, Jr. aff. ¶ 4). Further, the record in this matter demonstrates not only that the plaintiff was on disciplinary detention rather than protective custody, but also that the plaintiff knew he was on disciplinary detention. The plaintiff filed a grievance on September 24, 2009, complaining that he had been in Bravo Pod for three months and he had not received a disciplinary hearing (McGhaney aff. ¶ 5, ex. A, Bates Number 8265-A-002). According to the affidavit of Daryl McGhaney, the Assistant Director of the SLRDC, the plaintiff did not have a hearing because a warrant on the charge was issued against him in Sumter County (*id.*).

Furthermore, to request protective custody, a detainee must utilize the grievance procedure. After a grievance is filed, the request is evaluated by the Assistant Director, who makes a determination if the detainee needs to be on protective custody. Once the detainee is placed on protective custody, his status is reviewed periodically to see if the basis for his status remains valid. According to defendant Corporal John C. Shirah, Jr., an officer at the SLRDC, he is not aware of the plaintiff ever requesting protective custody prior to September 5, 2009 (Shirah aff. ¶¶ 16-17).

Officers at the SLRDC have two ways to determine whether an inmate is on protective custody. First, an officer can access the Jail Management System ("JMS") on the computer to learn the detainee's custody status (Shirah aff. ¶ 10). Included in the information on JMS would be any "keep separate" notes as well as a protective custody designation (*id.*). Secondly, the officer can determine protective custody status by the inmate designations on the magnetic board in the booking area of the SLRDC (*id.* ¶ 11). An inmate who is on protective custody has a "PC block" placed on the magnetic board (*id.*). This designation and the board in general allow the officers to make cell assignments quickly and avoid

---

[3]The plaintiff was on disciplinary detention because of a charge against him of sexual assault against another inmate (Daryl McGhaney aff. ¶ 5).

6

assigning detainees to an improper cell (*id.*). Defendant Corporal Shirah attests that the plaintiff did not have a PC block on the magnetic board on September 5, 2009, and, according to his inmate log on the JMS, he has never been on protective custody status (*id.* ¶¶ 11-12).

Prior to housing any two inmates together, each inmate's file is reviewed in the JMS to determine whether the inmates have any history of conflict with one another or a violent history (Adams aff. ¶ 9). In this matter, the plaintiff and Jermaine Thomas, the inmate placed in his cell on September 5, 2009, had been housed in an open pod together for almost one year prior to this without any problems (*id.*¶ 10). Further, defendant Corporal Shirah testified in his affidavit that he has checked the plaintiff's "keep separates" and his inmate log on the JMS, and determined he had no "keep separate" status with Thomas (Shirah aff. ¶ 12). Therefore, there was no concern in housing them in the same cell in Bravo Pod.

The plaintiff alleges Thomas told the defendants that the plaintiff wanted to kill him prior to placing Thomas in the cell with the plaintiff. According to defendant Corporal Shirah, on September 5, 2009, detainee Jermaine Thomas was transferred to Bravo Pod because of a disciplinary problem. Thomas was assigned to Cell B-1117, and he was advised he would be placed in a cell with the plaintiff. At that time, Thomas requested protective custody and claimed that he had a price on his head and that the plaintiff wanted to kill him. When defendant Corporal Shirah requested specific information, Thomas could neither explain his claim nor give specific information for the officers to evaluate his allegations (Shirah aff. ¶¶ 5-6).

The plaintiff states Thomas' claims were "fabricated lies" (comp. 3). The defendants assert, and the plaintiff has not contested, that the plaintiff freely allowed Thomas to be placed in his cell without protest or complaint (Shirah aff. ¶ 8). Defendant Corporal Shirah attests:

7

> As soon as the cell door shut and I turned around to walk to the staircase, I heard someone knocking on the cell door. When I turned around, Detainee Agumagu had Thomas in a headlock. I radioed to have the cell opened and ordered Detainee Agumagu to release Thomas. Detainee Agumagu complied, and said, "he told you he didn't want to come in here." The entire incident occurred in a matter of seconds, and Detainee Agumagu never complained to me of any injuries.

(*Id.* ¶ 9). As noted above, deliberate indifference requires a showing that a prison official actually knew of and disregarded an objectively serious condition, medical need, or risk of harm. However, the record is clear the defendants checked the JMS database and the magnetic board prior to placing Thomas in the plaintiff's cell and defendant Shirah immediately responded to the incident, evidencing the defendants did not act with deliberate indifference.

The plaintiff has not submitted any evidence, or even allegation, of any injury that resulted from the alleged incident between him and inmate Thomas. According to the affidavit of Assistant Director McGhaney, the plaintiff's medical records reflect that the plaintiff was given Ibuprofen for complaints of jaw pain following the incident, and there were no physical manifestations of any injury. Further, the plaintiff had complained of tooth pain numerous times prior to the incident, including the day before the incident (McGhaney aff. ¶¶ 12-14, ex. C, Bates Nos. 8265-B-0020-0029). The plaintiff's complaints in the months following the incident related to his toothache and heartburn (*id.*, Bates Nos. 8265-B-0011-0019).

Furthermore, the plaintiff argues throughout his response to the motion for summary judgment that the defendants *negligently* failed to provide for his physical safety. As pointed out by the defendants in their reply to the plaintiff's response, "[n]egligence, clearly, is inadequate to support an eighth amendment claim." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). As the plaintiff has failed to demonstrate that placing Inmate Thomas in

8

his cell posed a sufficiently serious risk or that the defendants acted with deliberate indifference to that risk, summary judgment should be granted on this claim.

Lastly, the defendants argue they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff's conclusory allegations fail to demonstrate that the defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

9

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 33) be granted.

IT IS SO RECOMMENDED.


                                                          s/Kevin F. McDonald
                                                          United States Magistrate Judge

September 22, 2010

Greenville, South Carolina